Charles E. WILLS, an individual,
Plaintiff,

v.

TRANS WORLD AIRLINES, INC., a cor-
poration, Defendant.

Civ. A. No. 1200–59.

United States District Court
S. D. California,
Central Division.

Dec. 29, 1961.

Charles E. Wills, Los Angeles, Cal., plaintiff, pro se.

Wright, Wright, Goldwater & Mack, Loyd Wright, Loyd Wright, Jr., Edgar R. Carver, Jr., Crider, Tilson & Ruppe, Elber H. Tilson, Donald E. Ruppe, Los Angeles, Cal., for defendant.

MATHES, District Judge.

Plaintiff brings this action under § 404(b) of the Civil Aeronautics Act of 1938 [49 U.S.C.A. § 484(b), as amended, id. § 1374(b) (1958)], alleging that unjust discrimination and undue preference was visited upon him as a prospective passenger aboard one of defendant's aircraft. The relief claimed is for actual damages for breach of contract and fraudulent misrepresentation, for a permanent injunction against defendant, and for exemplary or punitive damages as well.

The facts are largely undisputed and, as established by a preponderance of the evidence, are these: Plaintiff is engaged in the practice of law at Los Angeles, California. In pursuit of his profession, plaintiff determined to go by commercial air carrier to Louisville, Kentucky, in early October, 1959, for the purpose of attending the taking of certain depositions there. On October 2nd, plaintiff purchased a ticket from defendant in Los Angeles for passage aboard flights which included defendant's then newly-inaugurated jet service between St. Louis, Missouri, and Los Angeles.

At the time of the ticket purchase, defendant reserved for plaintiff space in the tourist section, except for flight 438, aboard the following flights:

(a) T.W.A. jet flight 78, going from Los Angeles to St. Louis on October 7th;

(b) T.W.A. flight 438 (first class), going from St. Louis to Louisville on October 7th;

(c) T.W.A. flight 227, returning from Louisville to St. Louis on October 11th; and

(d) T.W.A. jet flight 77, returning from St. Louis to Los Angeles on October 11th.

Because of delay in the scheduled departure of defendant's jet flight 78 from Los Angeles on October 7th, plaintiff was unable to make the connecting trip that day to Louisville aboard flight 438, but obtained passage on Eastern Airlines flight 450, which brought him to Louisville near midnight of that day.

On the morning of October 10th, plaintiff telephoned defendant's reservations office in Louisville and requested space on defendant's flight 331 that evening from Louisville to St. Louis. During the afternoon of the 10th, plaintiff again called defendant's Louisville reservations office, confirmed that he would use his reservation for flight 331 that evening, and asked that his prior reservation for flight 227 from Louisville to St. Louis be cancelled. About 5 p.m. on the 10th, plaintiff went to the Louisville airport and "checked in" for flight 331. At that time it was necessary for plaintiff to purchase from defendant a surcharge ticket from Louisville to St. Louis, since flight 331 was entirely a first-class flight and plaintiff's ticket covered only tourist passage. In so doing, plaintiff informed defendant's Louisville reservations office of his reservation on T.W.A. jet flight 77, scheduled to leave St. Louis for Los Angeles the following morning at 11:40.

By advising defendant's Louisville agent on October 10th of his intention to utilize the reservation on flight 77, plaintiff in effect "reconfirmed" well in advance of six hours before flight departure

time in compliance with Passenger Rule 12 of the applicable tariff, which provided, *inter alia*, that "the carrier will cancel the reservation (including the complete remaining itinerary) of any passenger from any point named on his ticket or exchange order unless the passenger advises the carrier of his intention to use his reservation by communicating with a reservation or ticket office of the carrier at such point at least six hours before his scheduled flight departure time."

In the normal course of things, this reconfirmation would have been processed and the airline's agents at plaintiff's next point of departure notified; for defendant's ordinary course of business required that the office thus notified by the reconfirming passenger, here Louisville, forward a "passenger load message" to the next station on the passenger's continuing journey, here St. Louis, calling attention to the fact that the passenger held a continuing reservation on another flight. So plaintiff's act of informing defendant's Louisville agent of his reservation for jet flight 77 was all that was required of him to "reconfirm" passage to Los Angeles on October 11th.

Plaintiff reached St. Louis aboard T.W.A. flight 331 about 1:45 on the morning of October 11th, and again "reconfirmed" to defendant's agent at the St. Louis airport his intention to use his reservation for flight 77 later that morning. The agent then assured plaintiff that all was in order, and requested a telephone number by which plaintiff could be contacted, but plaintiff was uncertain where he would be staying for the night. Returning to the airport an hour before the scheduled departure of flight 77, plaintiff was advised by defendant's agent then on duty that the flight had been "oversold" and that in consequence plaintiff had been placed on "standby" status, inasmuch as defendant's agents in St. Louis had received no information from defendant's Louisville office concerning plaintiff's reconfirmation of his flight 77 reservation.

On October 10th, defendant's St. Louis office had received word from the airline's central control office in Kansas City, Missouri, that flight 77 had been "oversold" at least to the extent of five first-class passengers. Whenever space for a particular flight had been oversold, it was defendant's practice at that time to determine first which passengers would be least inconvenienced by removal and to solicit volunteers from this group to go on a different flight. If the original flight nonetheless remained oversold, persons would be removed who were "local" passengers, i. e., passengers boarding for the first time and without continuing reservations, including those whose prior reservations were in doubt due to no record of reconfirmation at the departure station of the airline.

Plaintiff was refused permission to board flight 77 on the claimed ground that since no information had been received, his reservation of October 2nd was properly cancelled because of plaintiff's failure to "reconfirm" as required by above-quoted Rule 12. After the departure of flight 77, plaintiff was met by defendant's St. Louis passenger relations representative who informed him that seats had been reserved aboard another airline's next flight to Los Angeles. Plaintiff thereupon made arrangements to board the suggested flight, and was able to reach Los Angeles four and one half hours after defendant's flight 77 had arrived there.

Plaintiff contends that he was unduly prejudiced and that unreasonable preference was given others, with respect to defendant's flight 77 on October 11, 1959, since he was one of two tourist passengers removed or forbidden passage in favor of first-class passengers who were accommodated by being placed in the tourist section of the aircraft. Defendant concedes that at least three passengers who held first-class tickets for flight 77 were transported in the tourist portion of the aircraft, and the records of the airline indicate that as many as seven first-class passengers were transported in the tourist section. The evi-

dence establishes, moreover, that all of these passengers made reservations for the flight subsequent to October 2nd, the validation date of plaintiff's original reservation.

█ Section 404(b) of the Civil Aeronautics Act, as amended, provides that:

"No air carrier * * * shall make, give, or cause any undue or unreasonable preference or advantage to any particular person * * in air transportation in any respect whatsoever or subject any particular person * * * to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." [49 U.S.C.A. § 1374(b).]

Few guide lines exist to aid in determining what is "undue or unreasonable preference" and "unjust discrimination" within the meaning of the Act. No explanation of these terms appears in the record of the pre-enactment Congressional debate, which dealt largely with the question of whether air regulation should be under the basic control of the Interstate Commerce Commission or, as proposed, under a separate authority. [83 Cong.Rec. 6401, 7064, 8843 (1938); see also H.R.Rep. No. 2360, 85th Cong., 2nd Sess. (1958).]

The statute does, however, declare the policy of the Act, *inter alia*, to be:

"The promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices." [49 U.S.C.A. § 1302(c).]

Analogous provisions are found in the Interstate Commerce Act, it being there declared unlawful for any common carrier by rail or pipe line to give or cause undue or unreasonable preference or advantage, "or to subject any particular person * * * to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." [49 U.S.C.A. § 3(1); see also id. § 316(d).] Such language has been held to be directed against "discrimination in all its forms." [Dixie Carriers v. United States, 351 U.S. 56, 60, 76 S.Ct. 578, 581, 100 L.Ed. 934 (1956); United States v. Baltimore & O. R. Co., 333 U.S. 169, 175, 68 S.Ct. 494, 92 L.Ed. 618 (1948).] Although the statute is cast in general terms because of the complexities of the subject [see United States v. Pennsylvania R. Co., 323 U.S. 612, 616, 65 S.Ct. 471, 89 L.Ed. 499 (1945)], it is plainly intended to provide individual passengers with a Federal right to service without undue or unreasonable discrimination. [Cf. Boynton v. Commonwealth of Virginia, 364 U.S. 454, 463, 81 S.Ct. 182, 5 L.Ed.2d 206 (1960).]

Similarly, the Civil Aeronautics Act declares "in behalf of any citizen of the United States a public right of freedom of transit through the navigable airspace of the United States." [49 U.S.C.A. § 1304.] However, the only reported decision which has dealt determinatively with the issue of discrimination under the Civil Aeronautics Act, other than as to rates, appears to be Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2nd Cir., 1956), and it was there held that the provision declaring unlawful any unreasonable discrimination [49 U.S.C.A. § 484(b), as amended, id. § 1374(b) (1958)], does create an actionable civil right, a Federal cause of action, for the benefit of persons using the facilities of interstate air carriers. There the plaintiffs were negroes who alleged that, although they held reservations from California to Sydney, Australia, they had been unjustly discriminated against by the defendant airline because of their race and color, in being prevented from continuing their flight after arriving in Hawaii.

The rationale of the decision in Fitzgerald, supra, is that inasmuch as the Civil Aeronautics Act makes it a Federal crime to violate its provisions [49 U.S.C.A. § 622(a), as amended, id. § 1472(a) (1958)], the case falls within the doctrine which permits treatment of a criminal statute as creating a Federal cause of action in favor of members of

the class for whose protection the statute was enacted. This should be the result, the court emphasized, because of the fact that, despite provision in the Act for complaint to the Civil Aeronautics Board, the administrative authority could *ex necessitate* order only future compliance, and could afford no redress for past violations. [See Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla.Dist.Ct.App.), cert. denied 116 So.2d 772 (Fla.Sup.Ct. 1959.)]

■ This doctrine, that specific statutory authority is not an essential prerequisite to the existence of power in the Federal courts to grant relief in damages to enforce the object or purposes of a particular statute, has ample support in precedent. As Mr. Justice Frankfurter has put it:

` "A duty declared by Congress does not evaporate for want of a formulated sanction. When Congress has 'left the matter at large for judicial determination', our function is to decide what remedies are appropriate in the light of the statutory language and purpose and of the traditional modes by which courts compel performance of legal obligations. * * * If civil liability is appropriate to effectuate the purposes of a statute, courts are not denied this traditional remedy because it is not specifically authorized." [Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 261, 71 S.Ct. 692, 700, 95 L.Ed. 912 (1951) (dissenting opinion); see: Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); see also United Public Workers of America v. Mitchell, 330 U.S. 75, 93, 67 S.Ct. 556, 91 L.Ed. 754 (1947).]

Indeed, since the consequences which turn upon violation of a statute are considered as largely determining the extent of obedience, "liability to private suit * * * may be as potent a deter-

rent as liability to public prosecution * * *." [Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 41–42, 36 S.Ct. 482, 485, 60 L.Ed. 874 (1916).]

Although the Civil Aeronautics Act sets forth the extent of the powers and duties of the administrative authority, it fails to delineate the scope of such functions as are necessarily left to the judiciary under the Act, thus confronting the courts with this responsibility. [See 49 U.S.C.A. §§ 1484, 1486–1489; cf. Slick Airways v. American Airlines, 107 F.Supp. 199, 206 (D.C.D.N.J.1951), appeal dismissed, 204 F.2d 230 (3rd Cir., 1953), cert. denied 346 U.S. 806, 74 S.Ct. 54, 98 L.Ed. 336 (1953).] As already suggested, the first consideration which argues that a Federal cause in behalf of the passenger fulfills a major purpose of the Act is the fact that, although the statute confers upon the administrative agency power to investigate and render prospective relief to protect from impending statutory violation, there is no administrative authority to award damages or other relief to a passenger for past wrongs. [See: 49 U.S.C.A. § 1482; Fitzgerald v. Pan American World Airways, supra, 229 F.2d at 502; S. S. W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F.2d 658, 663 (D.C.Cir., 1951), cert. denied 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).]

Without judicial intervention to redress past violations of the statute, the rights of air passengers, as declared in the Act, to travel without undue preference or unjust discrimination would be robbed of vitality and the purposes of the Act substantially thwarted. It cannot be presumed, nonetheless, that the Congress intended no relief for past infringement of the Federal rights of air passengers there declared. [See: Texas & N. O. R. Co. v. Brotherhood of Ry. Clerks, 281 U.S. 548, 569–570, 50 S.Ct. 427, 74 L.Ed. 1034 (1930); Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 162–163, 2 L.Ed. 60 (1803); see also Bell v. Hood, 71 F. Supp. 813 (D.C.S.D.Cal.1947).] Indeed, "where federally protected rights have been invaded, it has been the rule from

the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." [Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946).]

Of course, the alternative to a Federal cause of action for the aggrieved airline passenger is to remit a plaintiff to his remedy in the State courts, based upon a State-created cause of action. But this recourse would fall far short of effectuating the purposes of the Act. Left with a cause of action under State law for breach of contract, a passenger would rarely be able to prove actual damage commensurate with the wrong, nor as a rule would he be entitled to exemplary damages. [See: Brown v. Coates, 102 U.S.App.D.C. 300, 253 F.2d 36, 39–40, 67 A.L.R.2d 943 (D.C.Cir.1958); Haigler v. Donnelly, 18 Cal.2d 674, 680, 117 P.2d 331, 335 (1941).] If the offended passenger were also to press a cause of action under State law for actual and punitive damages for fraudulent misrepresentation, he would confront almost insurmountable problems of proof. [See: Pence v. United States, 316 U.S. 332, 338, 62 S.Ct. 1080, 86 L.Ed. 1510 (1942); Heckenkamp v. Kennedy, 267 F.2d 887, 891 (8th Cir. 1959); Hobart v. Hobart Estate Co., 26 Cal.2d 412, 422, 159 P.2d 958, 964 (1945).]

On the other hand, as will be seen, the passenger is not precluded from recovery of exemplary damages under the Civil Aeronautics Act. Furthermore, a Federal cause of action would permit the standards of conduct fixed by the Act to be uniformly enforced despite varying agreements or contracts. [Cf. Braughton v. United Air Lines, 189 F.Supp. 137 (D.C.W.D.Mo.1960); Rosch v. United Air Lines, 146 F.Supp. 266 (D.C.S.D. N.Y.1956); see N. Y. Cent. R. R. Co. v. Mohney, 252 U.S. 152, 157–158, 40 S.Ct. 287, 64 L.Ed. 502 (1920).]

Every pertinent consideration of reason and policy, therefore, points to the compelling desirability of permitting a Federal cause of action to the aggrieved passenger as a needed force to assure full compliance with the requirements of the Act.

█ In the case at bar, plaintiff is entitled to such a cause of action under the statute. It is recalled that plaintiff had reconfirmed while in Louisville and became entitled to the accommodations accorded prior-confirmed passengers, notwithstanding oversale of space aboard the aircraft. Plaintiff's reconfirmation should have been forwarded to St. Louis, but this was not done. Nor did defendant's agents at St. Louis make any attempt to verify plaintiff's reconfirmation in Louisville before excluding him from flight 77. Plaintiff was entitled to priority in flight accommodations over all other passengers who had made later reservations than he and yet were permitted to board the flight. In a word, defendant took plaintiff's tourist seat and arbitrarily and capriciously gave it to a first-class passenger who, even under the airline's established procedure in event of oversales, was not entitled to it.

By disregarding plaintiff's priority, the defendant airline unjustly and unreasonably discriminated against him, and thus violated the Act. [49 U.S.C.A. § 1374(b).] This is not to say, of course, that all airline passengers must be treated precisely alike, that courtesies extended by the airline to certain passengers, such as special waiting and boarding facilities for ill persons and others, are here held to be unduly discriminatory. Rather, what is here condemned is any unwarranted interference with a passenger's right to accommodations aboard a particular flight, on the basis of a prior and reconfirmed reservation, which results in his exclusion from the space to which he is entitled. [See Cowen v. Winters, 96 F. 929 (6th Cir. 1899).]

Plaintiff prays for injunctive relief as well as actual and punitive damages. As to threatened or continued violations *in futuro*, the Act specifies, as previously mentioned, that a complaint may be brought before the administrative agency, which is duty bound to investigate, and then may issue an order compelling

future compliance with the requirements of the Act. [49 U.S.C.A. § 1482.].

It is always worth repeating that:

"The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings." [Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 767, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796 (1947).]

■ The Civil Aeronautics Act not only delegates to the administrative authority the power and duty to entertain, investigate, and act upon complaints of violation, by requiring compliance with the statute, but also provides that review of administrative orders may be made only "by the courts of appeals of the United States * * *." [49 U.S.C.A. § 1486(a).] Since plaintiff makes no claim that the administrative procedure available to him is in any way inadequate, or would in the process cause him irreparable harm, so as to warrant judicial cognizance of his claim prior to resort to the established administrative procedure [see: Aircraft & Diesel Corp. v. Hirsch, supra, 331 U.S. at 773–774, 67 S.Ct. 1493; Eccles v. Peoples Bank, 333 U.S. 426, 432, 68 S.Ct. 641, 92 L.Ed. 784 (1948)], this Court must decline to exercise its equity jurisdiction to entertain plaintiff's claim for injunctive relief prior to exhaustion of his administrative remedies, including review in the court of appeals. [See: Allen v. Grand Cent. Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 48–50, 58 S.Ct. 459, 82 L.Ed. 638 (1938); see also United States v. Western Pac. R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).]

To hold otherwise under the circumstances presented by the case at bar "would contravene the will of Congress as a matter of restricting or deferring judicial action. * * * would nullify the congressional objects in providing the administrative determination." [Aircraft & Diesel Corp. v. Hirsch, supra, 331 U.S. at 767, 67 S.Ct. at 1501; see Lichten v. Eastern Airlines, 189 F.2d 939, 25 A.L.R.2d 1337 (2nd Cir. 1951).]

Turning now to the issues as to damages, plaintiff's financial or out-of-pocket loss as a proximate consequence of defendant's conduct was nominal. The delay caused by his removal from defendant's flight 77 amounted to no more than four and a half hours and occurred on a Sunday. Further, although he retained his ticket for flight 77, plaintiff was then aware that he could have exchanged it for the ticket he purchased that day from another airline for his flight to Los Angeles. Defendant provided him with lunch. His other expenses, including transportation from the Los Angeles airport, would probably have been incurred in any event. So his certain out-of-pocket loss as a result of the discrimination was $1.54, the cost of a telephone call made from St. Louis to his wife in Los Angeles to explain his delayed arrival.

■ While actual damages for violation of a person's right to travel as a passenger aboard an interstate air carrier may include compensation for plain and blatant instances of humiliation and outrage suffered [see: Lake Shore & M. S. Railway Co. v. Prentice, 147 U.S. 101, 111, 13 S.Ct. 261, 37 L.Ed. 97 (1893); Solomon v. Pennsylvania R. Co., 96 F. Supp. 709, 712 (D.C.S.D.N.Y.1951)], the evidence at bar is not sufficient to warrant a conclusion that the outrage occasioned by plaintiff's removal from flight 77 was such as to justify an award intended to compensate for plaintiff's hurt feelings as an item of actual damages. Nor does the statement made to plaintiff by one of defendant's agents in the presence of other passengers at the boarding gate in St. Louis just prior to departure of flight 77, that "Thousands have tried to do something about this, but without success," form a basis for actual damages. When as here the extent and na-

ture of injury to one's feelings by public outrage cannot be established, an award of actual damages for such injury should not be granted. Thus the award for plaintiff's actual damages is limited to the nominal sum of $1.54.

■ There remains the question whether plaintiff is nonetheless entitled to exemplary or punitive damages in vindication of the violation of his right' to travel by commercial air carrier without unreasonable discrimination. It having been necessary to read into the statute by implication a Federal cause of action for prior-occurring violation of rights under the Act, there is little need to point out that no express statutory provision exists for an award of exemplary or punitive damages in such circumstances. Moreover, in the Fitzgerald case, supra, 229 F.2d 499, the court held merely that a Federal cause of action had been established; it was not there determined whether exemplary damages could or should be allowed.

Looking for analogy to the Civil Rights legislation embodied in 42 U.S.C.A. § 1983, it is noted that there the statute expressly grants a Federal cause of action for "redress", but no express provision is made for an award of damages, actual or punitive. Right of redress by way of an award of exemplary damages has nevertheless been implied under that statute on the ground that, in actions sounding in tort, punitive damages have traditionally been allowed where circumstances warrant, irrespective of enabling legislation. [Hague v. Committee for Industrial Organization, 101 F.2d 774, 789 (3rd Cir. 1939), mod'd on other grounds, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).]

So, too, in the case at bar, although plaintiff's rights were established by contract under the Act, deprivation of such contractual rights by unreasonable and unjust discrimination, in violation of the Act, amounted to tortious conduct on the part of defendant, imposition having been made upon plaintiff without his will or consent. Traditional judicial remedies generally available for tortious acts should, then, be available to plaintiff at bar. [See Scott v. Donald, 165 U.S. 58, 77–90, 17 S.Ct. 265, 41 L.Ed. 632 (1897); see also Parker v. Lester, 227 F.2d 708, 713, 1955), aff'd, 235 F.2d 787 (9 Cir. 1956).]

The fact that a plaintiff's pecuniary loss, proximately resulting from unjust discrimination, is inconsequential should not rule out exemplary relief, since it is the vindication of his rights as a passenger, and the need to protect the rights of every air passenger from future encroachment, which warrants the assessment of damages over and above the passenger's actual injury. [Cf. Barry v. Edmunds, 116 U.S. 550, 562, 6 S.Ct. 501, 29 L.Ed. 729 (1886); see Cal.Civil Code, § 3294.]

Accordingly, exemplary damages may be awarded to plaintiff "if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations." [Lake Shore M. S. Railway Co. v. Prentice, supra, 147 U.S. at 107, 13 S.Ct. at 263; see Mitchell v. Union Pacific Railroad Co., 188 F.Supp. 869, 874 (D.C.S.D.Cal.1960).]

The defendant airline, by refusal of its agents in St. Louis to permit plaintiff to board his flight despite prior reconfirmation, exhibited an "entire want of care" for the right of plaintiff to travel aboard defendant's aircraft without unreasonable discrimination. [See Cowen v. Winters, supra, 96 F. at 934.] Moreover, another consideration in determining the propriety of an award of exemplary damages is the evidence here that close upon plaintiff's removal there had been a substantial overselling of reservations for defendant's domestic flights. Four of the fifteen flights designated as jet flight 77 had been oversold from the inception of the jet service on September 27, 1959, through October 11th of that year. In all, the record discloses the following instances of oversales for, and

removals from, defendant's domestic flights during the latter half of 1959:

| Month | Oversales | Removals |
|---|---|---|
| July | 2478 | 713 |
| August | 3174 | 1012 |
| September | 2074 | 789 |
| October | 1754 | 660 |
| November | 1257 | 568 |
| December | 1429 | 387 |

These are strong indications that defendant wantonly precipitated the very circumstances which necessitated discriminatory removal of excess confirmed passengers from its flights. Furthermore, the action of the St. Louis office which resulted in plaintiff's removal from flight 77, and which forms the basis of plaintiff's cause of action under the statute, was part of defendant's reservation procedure at the time, and there can be no doubt that defendant "participated in, approved or ratified" the treatment accorded plaintiff by its St. Louis agents. [See General Motors Acceptance Corporation v. Froelich, 106 U.S.App.D.C. 357, 273 F.2d 92 (D.C.Cir.1959).]

Bearing in mind that the purpose in granting aggrieved airline passengers a Federal cause of action is to supplement the criminal and *in futuro* remedial provisions of the Act, I am impelled to hold that a passenger, who is the victim of such wanton discrimination as was practiced upon plaintiff here, is entitled to an award of exemplary damages.

While it is true that the Act's general criminal provision with respect to knowing and willful violation prescribes fines not in excess of $2,000 [49 U.S.C.A. § 1472(a)], this limitation should not bar a larger award of exemplary damages when deemed necessary in view of prior-occurring violations of the Act. For as already observed, the purpose of the award is two-fold, to complement the criminal and injunctive provisions of the Act, and to afford the courts the means to make effective vindication of the rights of the individual airline passenger which have been willfully or wantonly violated. [See: Orloff v. Los Angeles Turf Club, 30 Cal.2d 110, 180 P.2d 321, 171 A.L.R. 913 (1947); Greenberg v. Western Turf Ass'n, 140 Cal. 357, 73 P. 1050 (1903).]

Accordingly, judgment shall be entered awarding plaintiff compensatory damages of $1.54 and exemplary damages of $5,000.

The foregoing shall serve as findings of fact and conclusions of law [Fed.R. Civ.P. 52(a), 28 U.S.C.A.] and, in view of the holding, it is unnecessary to discuss or decide plaintiff's other claims.

Judgment in favor of plaintiff and against defendant for the sum of $5,001.54 and costs will be lodged with the Clerk by plaintiff, pursuant to Local Rule 7, West's Ann.Code, within five days.