Jay Stough and Continental Illinois National Bank, as Executor of the Estate of Eunice Stough, Plaintiffs-Appellants, v. North Central Airlines, Inc., Defendant-Appellee.

Gen. No. 49,669.

First District, First Division.
January 25, 1965.

Schuyler, Stough & Morris, of Chicago (Richard A. Cowen, of counsel), for appellants.

Jacobs and McKenna, of Chicago (Royce Glenn Rowe and Barry L. Kroll, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

Plaintiffs, Jay Stough and his wife, Eunice, brought suit against defendant, North Central Airlines, Inc., charging that defendant (1) by wrongfully refusing to transport them from Milwaukee to Rhinelander, Wisconsin, was guilty of giving or causing undue and unreasonable preference or advantage to other passengers contrary to Sec 484(b) of the Civil Aeronautics Act of 1938, and (2) was guilty of maliciously and wilfully refusing to allow plaintiffs to board its plane at Milwaukee for Rhinelander.

Plaintiffs sought damages for humiliation and outrage because they were compelled to spend sums in securing other transportation to Rhinelander from Mil-

waukee as well as for their return from Rhinelander to Chicago, and because defendant still retained all the money paid to it by plaintiffs for the round trip transportation. In connection with the charge of malicious and wilful conduct, plaintiffs sought punitive and exemplary damages from the defendant.

Defendant denied the charges and pleaded that all actions taken by it were in compliance with the tariffs and procedures to which it was subject.

The cause went to trial before a jury which returned a verdict in favor of defendant and answered a special interrogatory submitted by defendant finding that it was not guilty of maliciously and wrongfully refusing to allow plaintiffs to board its flight 901 from Milwaukee to Rhinelander. From a judgment on the verdict the plaintiffs appeal.

The facts, in the main, are undisputed. On July 30, 1957 plaintiff Jay Stough purchased for himself and his wife two tickets from defendant airline for round trip flight beginning on August 30, 1957, between Chicago, Illinois and Rhinelander, Wisconsin. The flights each way were to be made on two planes with change over in Milwaukee, Wisconsin.

On August 30, plaintiffs boarded defendant's plane, flight number 905, at Chicago O'Hare Airport on the first leg of their journey. Their baggage was checked right through and they were told that when their flight arrived in Milwaukee they would merely deplane from flight 905 and board their connecting flight 901. Plaintiffs arrived at Milwaukee Airport at 12:04 p. m. Central Standard Time.

The connecting flight 901 also had originated in Chicago, but at Chicago Midway Airport. It arrived at Milwaukee Airport at 12:53 p. m., Central Standard Time, forty-five minutes late. It was a DC–3 plane having a maximum seating capacity of twenty-

340

six passengers. Twenty passengers flew from Midway and three of them deplaned at Milwaukee.

When flight 901 arrived at Milwaukee plaintiffs had been waiting there for approximately fifty minutes. Prior to the arrival of flight 901 plaintiff, Jay Stough, had inquired at the defendant's ticket counter in Milwaukee about the connecting flight to Rhinelander and was twice told that the flight was not ready and that it would be announced. Plaintiffs went to other parts of the airport and did not hear the flight announced. When they went to the ticket counter for the third time they were informed that they would not be permitted to board the flight. While they were speaking to the girl at the counter two men, who had tickets for that flight, presented the tickets and were permitted to board. Four others had already boarded the flight which then left with twenty-three passengers.

Because of weather conditions ahead, the plane was limited, by federal regulations, to a maximum gross weight of 25,346 pounds. The flight took off with twenty three passengers, having an actual gross weight of 25,308 pounds.*

When plaintiffs were informed that they could not board flight 901 they asked the girl at the counter for their baggage. After some phoning, their baggage was returned to them. The girl then arranged for them to fly by alternate route via Green Bay, Wisconsin. They boarded about an hour later and upon landing at Green Bay were told that defendant's agents could give no assurance regarding the connecting flight to Rhinelander. Thereupon plaintiffs rented an automobile and drove to their destination. They arrived there about 7:30 or 8:00 p. m. The

---

* Although the flight was scheduled to continue on beyond Rhinelander, due to weather conditions it terminated there.

341

flight from Milwaukee usually arrived about 2:30 or 3:00 p. m.

In addition to the expense incurred in renting the automobile for the drive from Green Bay to Rhinelander, plaintiffs made a long distance call to friends awaiting their arrival. Plaintiffs further refused to avail themselves of the return portion of the flight tickets and returned to Chicago by automobile. They did not return or tender the return tickets to defendant for refund.

Plaintiffs concede that defendant had a right to reduce its passenger flight capacity in the interest of safety and in order to take on additional fuel, but they contend the airline had no right to "bump" them and allow two other passengers, who purchased their tickets on the morning of the flight, to take precedence.

Kenneth Hubertus, an employee of defendant, testified that it was the Airline's practice or procedure at that time "(i)nsofar as the passenger was concerned, if you were not able to accommodate all the passengers involved you would take off or refuse to transport the last passenger to check in for the flight."

Sec 404(b) of the Civil Aeronautics Act of 1938 [49 USCA Sec 484(b), as amended, 49 USCA 1374(b) (1958)] invoked in this cause provides:

(b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

342

A further federal flight regulation, which was part of the controlling tariff governing the defendant airline, provides:

> A carrier will refuse to transport any passenger whenever it deems such action necessary or advisable by reason of weather.

Sec 484(b) of the Civil Aeronautics Act as construed by the federal courts creates a cause of action in tort for damages because of unreasonable deprivation of contractual rights accruing to persons using the facilities of interstate air carriers. Fitzgerald v. Pan American World Airways, 229 F2d 499 (2nd Cir 1956); Wills v. Trans World Airlines, Inc., 200 F Supp 360 (1961).

Plaintiffs conceived that they had causes of action against the defendant airlines in tort and sought to recover punitive damages. While they may have also had a right to sue on the contract, they elected not to so proceed. In fact, they did not tender or return the unused portions of the transportation tickets and request a refund.

Therefore, the trial record must be examined to determine whether the verdict finding defendant not guilty of the alleged tortious conduct complained of is against the manifest weight of the evidence, and as plaintiffs argue "so tainted with passion and prejudice that plaintiffs' motion for a new trial should have been allowed by the trial court." In order for the court to determine that the verdict is against the manifest weight of the evidence, an opposite conclusion must be clearly evident or the jury's verdict palpably erroneous and wholly unwarranted from the manifest weight of the evidence. Benkowsky v. Chicago Transit Authority, 28 Ill App2d 257, 171 NE2d 416 (1960); Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705 (1947).

The evidence disclosed that the defendant, North Central Airlines, flew a scheduled flight from Milwaukee to Rhinelander. Although the airplane had twenty-six passenger seats, only twenty-three passengers were flown. The reason for this was that the weather conditions and applicable tariff restriction placed a maximum gross weight limitation of 25,346 pounds upon the flight.

The evidence disclosed that twenty-five persons had purchased tickets for this flight. Of necessity two passengers had to be "bumped" or refused permission to board. The evidence also indicated that of the twenty-three passengers who actually made the flight, seventeen of them originally boarded in Chicago. Of the eight passengers, including the two plaintiffs, who were at the Milwaukee airport waiting to board the flight, only six could be accommodated.

The defendant's procedure in such situations was to take off or refuse to transport the last passengers to check in for the flight. The essence of plaintiffs' claim is the contention that in "bumping" the plaintiffs rather than the two other passengers, "there was an undue preference and advantage given to other passengers in connection with flight 901 from Milwaukee to Rhinelander, and the plaintiffs were subjected to discriminatory disadvantage in connection with that flight."

It is conceded that under the weather situation then prevailing a disadvantage of necessity would have had to accrue to two ticket holding passengers. The question, therefore, for the jury's determination was whether the disadvantage suffered by the plaintiffs was unreasonably discriminatory as charged in Count I of the complaint as amended or malicious and wilful as charged in Count II. Plaintiffs here do not challenge the propriety of the jury's verdict with respect to Count II.

■ Plaintiffs did not adduce any evidence indicating that the defendant did not follow its procedural standard or policy of eliminating the last to check in for the flight. There is no evidence that any persons other than the plaintiffs were the last ones to check in at the Milwaukee ticket counter. From the facts on trial it could be assumed that the six passengers who were to leave from Milwaukee could or would all have arrived and checked in prior to 12:08 p. m., the scheduled arrival time of the flight (901) from Chicago-Midway. Plaintiffs' flight from O'Hare did not arrive in Milwaukee until 12:04 p. m. At that time plaintiff spent some time on the field looking for the flight that was not there. Jay Stough testified that "after I couldn't find it on the field I went to the counter of the North Central Airlines in the airport station there in Milwaukee." The jury could conclude that plaintiffs checked in after the other six passengers. Plaintiff, Jay Stough, testified that the last two passengers to board the plane "presented" their tickets and boarded. The jury had basis from the proof to determine that these two passengers had previously checked in and merely boarded the flight when it was ready. There was ample evidence and inferences logically flowing therefrom to establish that plaintiffs were refused passage because the tariffs and weather demanded that two passengers be "bumped" and that plaintiffs were the last ones to check in at defendant's ticket counter in Milwaukee.

Plaintiffs urge the Wills case, cited above, as determinative of their position on appeal. However, the factual situation there is dissimilar to the instant case. In finding plaintiff entitled to punitive damages of $5,000 the court there held that defendant airline disregarded its own established reservation procedure, and unjustly and unreasonably discriminated in viola-

345

tion of the Act by excluding plaintiff from the space to which he had priority, by reason of his having reconfirmed his connecting reservations within the time required by the applicable and controlling tariff. The passenger rule, which plaintiff there complied with and thus established his priority status, required that reservations be confirmed six hours before flight time. The court further found that by following a practice of consistently overselling its flights, defendant airline had "wantonly precipitated the very circumstances which necessitated discriminatory removal of excess confirmed passengers from its flights."

It is quite apparent that the evil alluded to in the Wills decision, that defendant airline failed to accord priority on the basis of the procedure to which it was committed, is not present in the case at bar. Although plaintiffs here called to confirm their reservations, the policy of defendant airline made no provision for confirmation. Defendant was not bound by a rule requiring it to adhere to a policy of confirmation, as was the airline in the Wills case, so that plaintiffs' act of confirming was unnecessary and could not be binding on the carrier. On the contrary, it is clear from the evidence that defendant extended priority in the instant situation on the basis of its established procedure. Additionally, defendant had no control over the weather, and was thus entirely blameless in bringing about the condition requiring removal of two passengers.

Plaintiffs argue, however, that defendant cannot acquit itself of fault by justifying its conduct on the basis of having followed its accepted practice and procedure. They contend the issue is whether the procedures followed were themselves discriminatory. In their argument plaintiffs set forth alternative procedures which they believe would have been feasible for defendant to adopt, and which would have had

the effect of granting to them the priority they contend was theirs.

Contrary to plaintiffs' suggestions, the issue is not what would be the best or most advantageous procedure for plaintiffs, but whether defendant did, in fact, by predicating priority on "check in" time, cause undue preference and advantage to be exercised in favor of other passengers, and thus subject plaintiffs to discriminatory disadvantage.

■■ Tariff rules and regulations, together with established practices and procedures, are binding upon the carrier and passengers. Koontz v. South Suburban Safeway Lines, Inc., 332 Ill App 14, 73 NE2d 919 (1947). To permit a carrier to deviate from either would open the door to discrimination. In our view the procedures which defendant followed, when applied uniformly to all passengers, is not illustrative of discriminatory conduct condemned by the Act. It is not the function of this court to determine from the record before us, the most appropriate operating procedures to be adopted by the airline in the instant cause.

We, therefore, hold that the finding that no tort was committed is not against the manifest weight of the evidence, and that the court did not err in denying plaintiffs a new trial.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.