OPINION OF THE COURT
Nat H. Hentel, J.
Claimant sues for damages allegedly incurred by virtue of defendants’ denial to transport him and his family, and for the insult and inconvenience thereby caused.
FINDINGS OF FACT
On February 23, 1981, claimant, his wife and three children were scheduled to fly home on Eastern Airlines flight 440, departing at 10:20 p.m., from West Palm Beach, Florida, to New York. Eastern Airlines, however, experienced a delay in departure of that flight because of inclement weather in New York. At approximately 8:30 p.m. that evening, claimant received a telephone call from Eastern Airlines informing him of the delay and inquiring whether he would accept confirmed seats on Pan American flight 234 scheduled to depart for New York at 10:00 p.m., 20 minutes earlier than his scheduled flight.
Claimant agreed, and Eastern ostensibly made confirmed reservations for him and his family on Pan American’s flight.
*848 Relying upon this call, claimant and his family arrived at the airport at 9:45 p.m. and presented themselves at the Pan American ticket counter where an agent denied knowledge of any reservations. They were denied boarding access. The ticket agent then offered them standby arrangements.
Enlisting the assistance of Eastern ticket agents in the same terminal, claimant was advised after Eastern’s contact with Pan American by telephone at that time that he had five confirmed, seats on reserve and that he should go to the Pan American gate immediately where he and his family would be allowed to board the Pan American flight. His tickets were once again confirmed and revalidated for Pan American flight 234 by Eastern. Subsequently, at the Pan American gate, and despite the revalidated tickets, claimant and his family were summarily denied boarding, and the plane departed for New York without claimant and his family. They then returned to New York aboard an Eastern flight in the early hours of the following morning, arriving at JFK International Airport in New York City at 3:00 a.m., on February 24, 1981.
CONCLUSIONS OF LAW
The rights of air travelers are carefully and clearly delineated for the lay person in a pamphlet distributed by the Civil Aeronautics Board entitled Fly-Rights: A Guide to Air Travel in the U.S. (7th rev ed, June, 1980), in evidence, which reflects current obligations of air carriers as established by the tariff rules on file with the Civil Aeronautics Board.
The courts must interpret and ultimately determine upon whose shoulders liability should rest when an air traveler has been denied his travel rights, or merely inconvenienced.
Here we have two major airlines, each alleging that the other is liable for what clearly is a miscarriage of air carriage. Who is a traveler to rely upon while being shuffled from one carrier ticket counter to another in his effort to get from one city to another in the most trouble-free and expeditious way possible?
*849 As to the obligation of Eastern Airlines, the original carrier, Fly-Rights (p 7) in pertinent part reads: “Delayed and Cancelled Flights: * * * there are many things that can — and often do — make it impossible for flights to leave on time * * * Airlines generally will help stranded passengers find alternate flights * * * If the flight is cancelled, the airline, will rebook you on the first available flight to your destination”.
Thus, Eastern Airlines, faced with a delay, behaved in what this court must find to be a reasonable manner; and, in compliance with the tariff rules, promptly contacted claimant, and arranged an alternate flight with Pan American, and verbally offered confirmed reservations. It is recognized that air travel arrangements are often made via telephone or computer because of the time element involved. The traveler has no choice other than to rely on such oral confirmations.

v-

The behavior of Pan American, however, as opposed to that of Eastern, must come under more intense scrutiny.
Under the applicable tariff rule 240 (subd [C], par [1], cl [b]), the delay in claimant’s original flight obligated any other carrier, at the passenger’s request, to provide ongo-. ing transportation.
Tariff rule 240 (subd [C], par [1], cl [b]) provides: “If the carrier causing such delay [Eastern] '* * * is unable to provide onward transportation acceptable to the passenger, any other carrier, or combination of carriers, at the request of the passenger, will transport the passenger without stopover on its next flight * * * if it will provide an earlier arrival at the passenger’s destination.”
It then behooved Pan American, under these circumstances, to furnish transportation to claimant, who was delayed on another airline.
What evidence of this new and superseding independent obligation to transport exists? We must rely on the same information which caused claimant to bring his family to the airport at 9:45 p.m., on February 23, 1981, ready to board Pan American flight 234, scheduled to depart for New York at 10:00 p.m., when he was scheduled to leave at 10:20 p.m. on an Eastern flight.
*850 Confirmation of Pan American’s tickets was attained apparently, according to claimant’s uncontroverted testimony,-on three occasions: first, through the initial phone call informing claimant of Eastern’s delay; second, information in the reservation computer revealed five confirmed seats during claimant’s check-in at the Pan American ticket counter; and third’ through an Eastern ticket agent’s telephone contact with a Pan American ticket agent just prior to the flight.
This court finds further that no agency relationship between Eastern and Pan American occurred. In making confirmed reservations for claimant on Pan American, Eastern’s agents on his behalf, and Pan American therefore fulfilled its independent obligation to an air passenger under existing tariff rules.
It appears then, that a ticket agent at Pan American’s boarding gate, while acting under the authority of Pah American Airlines, failed to ascertain whether confirmed reservations did indeed exist, and then wrongfully denied claimant and his family available passage on Pan American flight 234.
Pan American in denying boarding under these circumstances, thereby participated in what is known in the industry as “bumping”, an offense for which the tariff rules provide for specific sanctions.
It is well established that an air carrier’s tariffs on file with the Civil Aeronautics Board have the force and effect of law, and must be accepted and applied by the courts unless set aside by the Civil Aeronautics Board; and that the provisions of the tariffs control the rights and obligations of the parties. (Emery Air Frgt. Corp. v United States, 499 F2d 1255.)
Fly-Rights (p 28) in pertinent part reads:

“Involuntary Bumping:

“If you are bumped involuntarily, the airline must pay you the fare to your destination, with a $37.50 minimum and a $200 maximum. If they can’t arrange another flight that is scheduled to reach your destination within two hours of the original flight * * * the amount of compensa *851 tian doubles * * * The denied boarding compensation is essentially a payment for your inconvenience.
“Like all rules, however, there are a few exceptions: To qualify for compensation, you must have a confirmed reservation * * *
“Most airlines require passengers to arrive at the boarding gate ten minutes before the scheduled departure * * * (pp 10-11).
“[T]he court can order the airline to pay (the traveler) if (he . is) able to convince the judge * * * that (he is) entitled to compensation.” (Emphasis added; see, also, CAB Economic Regulations, 14 CFR 250.9.)
The claimant apparently complied with all of the requirements imposed upon him by air travel rules, and yet he was involuntarily “bumped” by Pan American at a time when Pan American had failed to establish that air passage space was unavailable on its flight 234; or that available passenger space had been booked by other passengers prior in time to the claimant’s booking through Eastern.
Accordingly, upon all the evidence before the court as supplied only by the claimant’s uncontroverted testimony at the trial, and giving due attention to the memoranda of law submitted by both defendants, this court finds for plaintiff as against defendant Pan American only in a dollar amount of twice the price of five one-way air fares from West Palm Beach to New York for a total of $1,074, plus interest and costs. (See CAB Economic Regulations, 14 CFR 250.5 — 250.9.)