OPINION OF THE COURT
Paul H. Blaustein, J.
This small claim is based on TWA’s bumping of the plaintiff, Arlene Goranson, from her scheduled flight to London as part of a vacation tour for which she had contracted. The court holds TWA liable for bumping as a common-law breach of contract and awards compensatory damages in the amount of $1,500.
Despite the enormous number of passengers that have been bumped from flights, this court has found no other reported case in which actual compensatory damages have been awarded under simple common-law breach of contract. The court believes this to be a substantial remedy in bumping cases, particularly as applied to passengers who contract for tours or who otherwise find their vacation plans to go awry since special damages may be provable in more than a nominal amount, and more than the liquidated damages provided by airline regulations.
THE FACTS
Plaintiff, Arlene Goranson, contracted with TWA for a flight to London as part of a tour to Great Britain and other *69 places in Europe that was leaving on April 18,1982. She is an intelligent woman having a genuine interest in gardening and is a member of various horticulture associations. She therefore had a special personal interest in visiting the Savill Gardens which was scheduled as part of the tour. She saved for this trip and waited many years before taking it. She selected TWA because of its representations as to reliability and responsibility. One of many such representations in TWA’s brochures promoting the tour read:
“Remove uncertainties the TWA way
“Have you ever been stranded at an airport because you couldn’t get on a plane? Have you ever had to travel miles out of your way to catch a ‘bargain’ flight? If not, think about it. It’s not the best way to begin a carefree vacation. Consider: with TWA there are no charter risks, no standby blues or airport gambles. Every flight is scheduled, carrying with it the TWA reputation of reliability. You know in advance exactly where you’ll fly from and when. Maybe you’ll pay a few dollars more for peace of mind, but don’t you think it’s worth it?” (Emphasis in original.)
When she arrived at JFK Airport on the evening of the scheduled departure date, TWA was unable to provide her with the previously confirmed space due to overbooking. Reliability and peace of mind, promised to her, vanished except for the printing in the advertisements.
She could not obtain transportation to London for two days and she arrived in London on the following Monday, missing the first two days of her tour which included the Savill Gardens. She asked permission from TWA during the tour to return to London at the end of the tour to see the places that she missed. However, TWA refused this proposal. She was required to return to the United States with the remaining passengers as scheduled. TWA offered to pay her $400 being the maximum set forth in the CAB regulations, but she refused and brought this small claim action for $1,500.
twa’s contentions
TWA presented no witnesses or raised any factual issue. It claims that the remedy under the CAB regulations is *70 exclusive as to the amount of liability. It claims that when a carrier is unable to provide previously confirmed space due to more passengers holding confirmed reservations and tickets on a flight than there are available seats on that flight, the carrier is only required to take the actions provided by CAB regulations. The TWA tariff[1] filed with and approved by the CAB essentially incorporates these regulations.
THE ISSUES
The two issues presented are (1) whether TWA was liable because of overbooking and subsequent bumping as a simple common-law breach of contract; and (2) whether the amount of damages is exclusively governed by, and cannot exceed that allowed by CAB regulations.
BACKGROUND AND THE REGULATORY FRAMEWORK
In 1976, Justice Powell, in Nader v Allegheny Airlines (426 US 290, 293-294), discussed the necessity of overbooking and the airlines’ contention that it was a desirable practice: “Such overbooking is a common industry practice, designed to ensure that each flight leaves with as few empty seats as possible despite the large number of ‘no-shows’ — reservation-holding passengers who do not appear at flight time. By the use of statistical studies of no-show patterns on specific flights, the airlines attempt to predict the appropriate number of reservations necessary to fill each flight. In this way, they attempt to ensure the most efficient use of aircraft while preserving a flexible booking system that permits passengers to cancel and change reservations without notice or penalty. At times the practice of overbooking results in oversales, which occur when more reservation-holding passengers than can be accommodated actually appear to board the flight. When this occurs, some passengers must be denied boarding (‘bumped’). The chance that any particular passenger will be bumped is so negligible that few prospective passengers aware of the possibility would give it a second thought. * * * Thus, based on the 1972 experience of all *71 domestic airlines, there was only slightly more than one chance in 2,000 that any particular passenger would be bumped on a given flight. Nevertheless, the total number of confirmed ticket holders denied seats is quite substantial, numbering over 82,000 passengers in 1972 and about 76,000 in 1973.”
While the odds of a passenger being bumped is small, their total numbers are obviously substantial, particularly to a naive Judge or passenger who expects to have the airline honor his ticket. An early case illustrated that in 1959,[2] bumping because of oversales on just one single flight occurred in a significant number of cases:
Month (1959)
July
August
September
October
November
December
Oversales
2,478
3,174
2,074
1,754
1,257
1,429
Removals
713
1,012
789
660
568
387
This was well before any CAB regulations were issued or the CAB approved overselling and bumping practices. Thereafter the courts and the CAB have attempted to put some reins on the airlines’ bumping practices.
The CAB?s current policy embodied in its oversales regulations (14 CFR 250.1 et seq.), however, is (1) to allow oversales, (2) to leave it to the carrier to ensure that bumping is minimized,[3] (3) to provide a regulated amount or minimum compensation to the aggrieved passenger, and (4) to recognize the passenger’s optional right to recover damages in a court of law.[4]
*72 The inconsistency of the CAB’s approval of the bumping practice, along with the implied recognition that it is a breach of contract, has proven to be troublesome.
Under CAB regulations, in the case of “deliberate overbooking”,[5] the airline must now follow a defined procedure according to its own tariff to determine the relative priority of remaining as opposed to the potentially bumped passengers. It must first request volunteers who are willing to relinquish their reserved space (14 CFR 250.2b [a], [b]) in return for compensation and must arrange for comparable transportation for a passenger denied boarding. (14 CFR 250.4,[6] 250.5.)[7]
The airline may then deny boarding to a passenger in accordance with its own boarding priority rules. (14 CFR 250.2b [b]).) The airline, however, must then provide compensation as liquidated damages for involuntary denied boarding. (14 CFR 250.4 [a], [b].) The amount of this compensation as set forth in the tariff varies for each case, but the maximum is $400. (14 CFR 250.5.)
TWA claims it has offered $300, and is only responsible for $100 more. Plaintiff has refused all of TWA’s offers so that such offers are not relevant to the disposition of this case.
I
TWA’S LIABILITY FOR COMMON-LAW
BREACH OF CONTRACT FOR BUMPING
The Federal Aviation Act did not expressly create a private cause of action. Initially, it was not clear as to whether the Federal Aviation Law created a Federal cause of action, and if it did, to what extent it interfered with State causes of action. The statute clearly denied Federal pre-emption in a common-law savings clause. (Federal Aviation Act of 1948, § 1106 [US Code, tit 49, § 1506 (formerly US Code, tit 49, § 676)]), which read: “Nothing *73 contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.” The airlines have, at various times, resisted the Federal cause of action, pointing to common-law remedies and common-law savings clause. When this failed, the airlines then attempted to use the Federal cause, and the CAB regulations, as a shield for liability, and in the present case, to limit damages.
Consumers who have sought relief in courts have alleged a variety of Federal and State causes of action. The Federal remedies have included claims for discrimination under the Federal Aviation Act of 1958 (§ 404, subd [b] [US Code, tit 49, § 1374, subd (b)]), and for misrepresentation (§ 411[8] [US Code, tit 49, § 1381]), and under State law, for misrepresentation. Thus far little success has been achieved under the breach of contract and breach of warranty contract theories as well as the common-law misrepresentation theory.
Actions under subdivision (b) of section 404 (US Code, tit 49, § 1374) have been more successful. Subdivision (b) of section 404 reads: “(b) No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person * * * or subject any particular person * * * to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.” The Federal cause of action for “bumping” is not one of contract. It sounds in tort but actually is a statutory creation with regulatory amplification and delineation. A Federal “bumping” action requires a showing of unreasonable discrimination by the airline in selecting which passengers will board and which will be bumped.
The Federal cause of action was fashioned because the courts initially perceived that the State created cause of action would not be adequate and ordinarily, a claimant would not be entitled to exemplary damages to discourage widespread bumping practices. (Wills v Trans World Air *74 lines, 200 F Supp 360, supra [compensatory actual damages of $1.54 awarded; exemplary damages of $5,000 awarded].) Later claimants, however, were not so successful in obtaining exemplary damage awards once the CAB approved bumping and issued priority rules as to boarding. (See Karp v North Cent. Air Lines, 583 F2d 364 [affirming an award of $3 actual damages, reversing and denying an award of $2,000 in punitive damages]; Nader v Allegheny Airlines, 512 F2d 527, 549-551" [discussed infra, $25,000 award of punitive damages reversed]; Smith v Piedmont Aviation, 567 F2d 290, 292 [compensatory damages of $1,051.80 affirmed, $1,500 punitive damage award reversed].)
To date, most bumped passengers who have successfully recovered, have proceeded under the subdivision (b) of section 404 discrimination and “undue or unreasonable preference or advantage” theory, as it has evolved through judicial interpretation, particularly under Archibald v Pan Amer. World Airways, (460 F2d 14); Archibald places the burden of proof on the airlines to establish that its own priority system was followed. But a careful reading of the case law establishes that the airlines have not been immunized from a State common-law contract cause of action as a result of the Federal Aviation Act.
In the first case arising under subdivision (b) of section 404, Fitzgerald v Pan Amer. World Airways (229 F2d 499), plaintiff, Ella Fitzgerald, was bumped from a flight from Honolulu to Sydney. She had tickets for first-class transportation from San Francisco to Sidney and after the plane temporarily stopped at Honolulu the agents of defendant refused to allow her to board. She claimed that such refusal was based on racial discrimination in violation of subdivision (b) of section 404. The court decided that a person claiming under subdivision (b) of section 404 had a private right of action under Federal law, despite the existence of the right to proceed under State law under the savings clause.
Five years later in 1961, in Wills v Trans World Airlines (200 F Supp 360, supra), a passenger was denied passage on a flight because of overbooking. He brought an action in Federal court under subdivision (b) of section 404 claiming *75 unreasonable prejudice and unjust discrimination. In again holding that a Federal cause of action existed on behalf of the passenger which was not limited to a civil rights type of prejudice, the court perceived that any State remedy for breach of contract would be inadequate. The court noted (200 F Supp, at p 365): “Of course, the alternative to a Federal cause of action for the aggrieved airline passenger is to remit a plaintiff to his remedy in the State courts, based upon a State-created cause of action. But this recourse would fall far short of effectuating the purposes of the Act. Left with a cause of action under State law for breach of contract, a passenger would rarely be able to prove actual damage commensurate with the wrong, nor as a rule would he be entitled to exemplary damages.”
To offset the effect of Wills, the CAB issued new regulations providing for liquidated, compensatory damages to passengers denied boarding. The first case in which the airlines attempted to use these CAB regulations as a shield to liability was Mortimer v Delta Air Lines (302 F Supp 276, 280). Yet the court, in Mortimer (supra, p 281) refused to limit the passenger’s rights because of CAB regulation. “For two reasons, this Court does not agree. First the basis of this action is not breach of contract of carriage, which is the basis of denied boarding compensation, but rather violation of the anti-discrimination and preference section of the Federal Aviation Act. Denied boarding compensation is payable to a passenger, who does not fall within the exceptions noted, regardless of whether he has been the victim of discrimination or undue preference.” The court added {supra, p 282) that the regulatory denied-boarding-compensation was not intended to be exclusive remedy for damages of a common-law contract suit resulting from being barred from a flight: “Whatever the theory of such action may be — breach of contract, common law tort or a section 1374(b) violation — if the plaintiff was eligible for denied boarding compensation, and acceptance of it was declined, the regulation would not be a bar to suit.”
In Polansky v Trans World Airlines (523 F2d 332), the plaintiff claimed that TWA supplied services during a tour that were inferior from that advertised, claiming discrimination under subdivision (b) of section 404. Although over *76 booking was not involved, the case is still of interest as showing the viability of the common-law remedy. The court extensively discussed bumping and held {supra, pp 336, 338) that discrimination under subdivision (b) of section 404 was not a breach of contract:
“The words of the statute and the decided cases suggest that § 1374(b) [§ 404, subd (b)] does not seek to prevent the harm alleged by these plaintiff-appellants. The harm they suffered simply cannot be construed as discriminatory interference with access to air facilities although appellants have attempted to characterize the harm they suffered as a form of discrimination.
* * *
“In the present case, appellants have never alleged, and could not rightly allege, that state remedies for breach of contract are inadequate. Neither have they suggested any reason why the efficacy of the Federal Aviation Act would be improved by a federal breach of contract remedy in this case.” (Emphasis supplied.)
The conclusion of the court that a State remedy exists was the key point in denying the availability of a Federal remedy under subdivision (b) of section 404. (523 F2d, at p 338.)
Ralph Nader attempted to use the common-law misrepresentation theory in his celebrated case which ultimately reached the United States Supreme Court. Nader was bumped from a flight on Allegheny and as a result was unable to make a scheduled fund-raising rally. He claimed misrepresentation because of deliberate failure to apprise him of the overbooking practice of Allegheny.
The Court of Appeals for the District of Columbia, in Nader v Allegheny Airlines (512 F2d 527, supra) refused to consider the common-law misrepresentation argument on the grounds that section 411 of the Federal Aviation Act covered essentially the same subject matter (512 F2d, at p 542). Here, the airlines were initially successful in using the Federal law as a shield to common-law liability: “Thus framed, the issue becomes the effect, if any, the passage of the Federal Aviation Act had on the remedies available for the common law misrepresentational torts of air carriers.” *77 (512 F2d, at p 542.) The court then held that Nader could not present the common-law fraud argument despite the savings clause of section 1106, essentially because of the CAB’s section 411 jurisdiction. The court said (512 F2d, at p 543): “This conclusion, that the common law remedies for fraud and deceit cannot remain totally unaffected by the Act, is buttressed by the fact that the practices at issue have a significant rate making effect.”
The Supreme Court in Nader v Allegheny (426 US 290, supra) reversed and upheld the independent viability of the common-law remedy. The Supreme Court said (426 US, at p 300): “Under the circumstances, the common-law action and the statute are not ‘absolutely inconsistent’ and may coexist, as contemplated by § 1106.” The Nader decision further held that the Federal Aviation Act did not immunize the airlines from common-law liability preserved by section 1106 (426 US, at pp 301-302).
The Supreme Court also said (426 US, at pp 294-295): “Board regulations require each airline to establish priority rules for boarding passengers and to offer ‘denied boarding compensation’ to bumped passengers * * * Passengers are free to reject the compensation offered in favor of a common-law suit for damages suffered as a result of the bumping.” (Emphasis supplied.)
The Nader v Allegheny matter returned to the Court of Appeals in the District of Columbia in 1980 {Nader v Allegheny Airlines, 626 F2d 1031). By this time the Civil Aeronautics Board had changed its regulations. The court noted (626 F2d, at p 1036): “This [new] regulation requires carriers to post in their ticket offices and include with each ticket sold a notice that ‘Airline flights may be overbooked, and there is a slight chance that a seat will not be available on a flight for which a person has a confirmed reservation.’ ” Nader had continued the action under the theory of fraudulent representation, but the court held that Nader could not recover because he was not misled and knew about the overbooking practice. The fraudulent representation theory became doomed as the airlines disclosed their overbooking practices.
However, the Nader case unmistakably affirms the existence of common-law tort liability and it is only a mere *78 corollary to hold that common-law contract liability is viable. This conclusion is also supported by the fact that CAB regulations reserve to the passenger the right to pursue an alternative remedy; the regulations make it explicit that the CAB contemplated that the liquidated damages provided for denied boarding compensation was only an alternative to, not a limitation upon, contract law compensatory damages. (Nader v Allegheny Airlines, supra, 426 US, at pp 306-307.) Indeed, the CAB had even rejected the carrier’s proposal that the denied boarding compensation or liquidated damages be the exclusive remedy (Nader v Allegheny Airlines, supra, 426 US, at pp 306-307, n 18). This was noted, and along with the savings clause, relied upon by the Supreme Court in reaching its decision.
This court now concludes that when TWA refused to provide plaintiff passage on the plane that she had tickets — when she was “bumped”, and when TWA did not provide plaintiff with the first two tour days she contracted for, in each instance, there was a common-law breach of contract for which there is a traditional State court remedy. (See, also, Wills v Trans World Airlines, 200 F Supp 360, 365, supra; Polansky v Trans World Airlines, 523 F2d 332, 335, n 11, supra; Sabon Invs. v Braniff Airways, 534 F Supp 683, 685; cf. Levy v Eastern Airlines, 113 Misc 2d 847.)
Accordingly, TWA is liable for overbooking and bumping as simple common-law breach of contract and plaintiff Arlene Goranson is awarded actual compensatory damages without regard to TWA’s tariff or to any CAB regulation.
II
THE DETERMINATION OF ACTUAL DAMAGES
With respect to the damage issue, courts have held that damages may consist of a wide variety of elements, including expenses for substitute or alternate transportation, meals, compensation for humiliation, outrage and inconvenience. In Wills (200 F Supp, at p 366) the court said: “While actual damages for violation of a person’s right to travel as a passenger aboard an interstate air carrier may include compensation for plain and blatant instances of *79 humiliation and outrage suffered * * * the evidence at bar is not sufficient to warrant a conclusion that the outrage occasioned by plaintiff’s removal from flight 77 was such as to justify an award intended to compensate for plaintiff’s hurt feelings as an item of actual damages.”
Smith v Piedmont Aviation (567 F2d 290, supra) is more in point in assessing compensatory damages. Here such damages for overbooking were awarded because of the airlines’ failure to comply with subdivision (b) of section 404 of the Federal Aviation Act of 1958 (US Code, tit 49, § 1374, subd [b]), but reversed on the award of punitive damages. The case disclosed special circumstances in that the plaintiff was to be a groomsman in the wedding of a close friend in Tazewell, Virginia. His schedule, including a wedding rehearsal and a rehearsal dinner, were the same day of his flight. Twice prior to the schedule date of departure he reconfirmed his reservation. Smith was required to rent a car and drove to Tazewell over mountain roads with which he was not familiar. He missed the wedding rehearsal and part of the rehearsal dinner, but, fortunately, Smith performed flawlessly as a groomsman. With respect to the issue of damages, the court said (567 F2d, at p 292): “On the subject of compensatory damages, Smith was admittedly due $63.18 for fare refund and as compensation for denied boarding. This means that he was awarded approximately a thousand dollars for inconvenience, inability to reach the rehearsal on time, missing part of the rehearsal dinner, being required to drive an automobile in mountainous territory, and the cost of automobile rent. All of this occurred in a relatively short space of time, and, in essence, was about what any air traveler encounters when his plan schedules go awry. In our opinion, the compensatory award was generous. However it did not exceed the perimeters binding the discretion of the trier of fact.”
Plaintiff’s actual damages are related to her loss of two days of traveling and vacation in England where she had intended specifically to see the Savill Gardens and related attractions. She is therefore entitled to recoup these two days in England, with TWA paying her expenses as damages.
*80 The court therefore calculates her damages as the cost of round-trip air transportation to London ($800), ground transportation to and from airports for the round trip ($100), hotel and meals for three days in England ($400) and tour expenses ($100). This totals $1,400. Plaintiff is also entitled to recover for her extreme inconvenience (Smith v Piedmont Aviation, 567 F2d 290, supra), aggravated by TWA’s refusal to allow her to return to England at the end of the tour to see the attraction she missed on her first two days. Since the court’s small claim jurisdiction is only $1,500, only $100 additional can be allowed for inconvenience.
Judgment is therefore entered for plaintiff for $1,500 plus costs.

. CAB oversales regulations, 14 CFR 250.1-250.10. TWA’s tariff supplied to the court as rule 87 of the International Passenger Rules Tariff No. I. In this opinion, references will be made to the regulations and to the tariff.

. (Wills v Trans World Airlines, 200 F Supp 360, 367-368.) As discussed later, the number of bumpings influenced the court’s award of exemplary damages.

. This general policy is set forth in 14 CFR 250.2a. “§ 250.2a Policy regarding denied boarding. In the event of an oversold flight, every carrier shall ensure that the smallest practicable number of persons holding confirmed reserved space on that flight are denied boarding involuntarily.” Thus far, the courts have not made an airline present evidence that it has developed procedures to minimize bumping. However, in the day of elaborate computer technique and instant communication, this court sees little reason why an international vacationer on a long preplanned, contracted for tour should be bumped.

. 14 CFR 250.9/

. 14 CFR 250.1 defines this as follows: “ ‘Deliberate overbooking’ means the practice of knowingly confirming reserved space for a greater number of passengers than can be carried in the specific call of service on the flight and date for which confirmation is given.”

. “§ 250.4 Denied boarding compensation tariffs; liquidated damages.”

. “250.5 Amount of denied boarding compensation for passengers denied boarding involuntarily.”

. Section 411 (US Code, tit 49, § 1381) reads: “The Board may * * * investigate and determine whether any air carrier, foreign air carrier, or ticket agent has been or is engaged in unfair or deceptive practices or unfair methods of competition in air transportation or the sale thereof.”