OPINION OF THE COURT
Carol H. Arber, J.
In this small claims case, the court has been asked to decide when a ticket is a ticket. It all began when Mr. Boston and Ms. Burnap purchased two round-trip tickets from Tribeca Travel Agency for Paris, back in August of 1987. The travel agency booked them on Continental Airlines departing on September 16, 1987 and returning from Paris on September 26, 1987.
Perhaps it did not bode well for their trip that the tickets did not arrive until September 15, 1987, but nevertheless they took off at the scheduled time on September 16, 1987.
Once in Paris they called to confirm their return flight *473 three days before (Sept. 23) and they arrived at the airport on September 26, 1987 for their return flight in what they thought was a timely fashion, i.e., since the tickets indicated the departure time was 11:00 a.m. they arrived about 10 minutes before 10:00 and were informed that the flight had been rescheduled for 10:00 a.m. and that given customs and security they could not make the flight. Since both Mr. Boston and Ms. Burnap had obligations in New York and Continental had no other flights that day, they purchased two one-way tickets to New York on American Airlines.
Once back in New York, they wrote to Tribeca Travel requesting that they be reimbursed for the return tickets they had bought from American Airlines and Tribeca refused. Mr. Boston and Ms. Burnap sued Tribeca, and Tribeca in turn sued Sofa Travel (its agent) and Continental Airlines.
All parties appeared pro se before me for the trial on February 25, 1988. The claimants sued Tribeca Travel and through its president, Larry Handel, Tribeca Travel denied responsibility. Mr. Handel testified that the time of the return flight from Paris had been changed by Continental Airlines on September 5, 1987. Mr. Handel indicated that he wrote the ticket himself on September 4, 1987. He acknowledged however that the ticket was not hand delivered until September 15, 1987. When asked why the ticket was not altered to reflect the change in time between September 4 (when it was written) and September 15 (when it was hand delivered) Mr. Handel had a number of explanations which are presented here, not necessarily in the order argued. The first of those was that the change occurred over a holiday weekend (Labor Day). The second was that he did not have a computer on which to receive notice of the change. Third, he stated that the cost of the tickets ($440) was substantially less than the market price (over $1,200). Finally, Mr. Handel argued that anyone who travels nowadays must count on delays and problems and that they must learn to take it in stride. Hence, this decision since it seems clear to the court that no monetary award alone will sufficiently indicate to the travel agent that while travel delays and hassles these days are more the rule than the exception, that he has some obligation to prevent them where he is responsible.
Following Mr. Handel’s testimony Mr. Stuart Poliak, the general manager of Continental Airlines, testified that Continental had rescheduled the time of the return flight from Paris to New York on September 4, 1987. As was their *474 standard procedure for such changes (or "Ques” as they call them), the change was relayed by computer to Tribeca Travel agents on September 5, 1987. He offered into evidence a computer printout with an accompanying explanation of the various codes contained in it which indicated that the information concerning the change in flights had been sent to the Continental reservations agents in Paris. When questioned about why Mr. Boston and Ms. Burnap had not been told of the time change when they called to reconfirm their flight in Paris, he responded that the code on the printout indicated that the travel agent had already been notified and therefore there was no need to tell them.
Neither the airline nor the travel agent acknowledge any responsibility for the failure to notify Boston and Burnap. Mr. Handel implied that the purchase of a ticket at a bargain rate creates less of a contract than if it is purchased at full face.
Mr. Handel seems to view the purchase of an airline ticket as no different from buying a subway token: Caveat emptor and if the train comes, get on it quick! These arguments notwithstanding the courts have recognized that the purchase of an airline ticket creates a contract between the parties (Goranson v Trans World Airlines, 121 Misc 2d 68 [White Plains City Ct, Westchester County 1983]). Here the travel agent held himself out as being in the business of selling tickets. Both claimants responded and purchased tickets. Clearly part of the contract created by the purchase is being able to rely on the date and times of flight departures as they are given on the ticket.
The travel agent claims that he had no computer in his uptown office and therefore did not receive the transmission from Continental Airlines indicating that they had changed the time of departure. This is no defense since he had a computer in his other office and, more importantly, he had an obligation to inform the passengers who purchased tickets and relied on him to provide them valid and proper tickets in exchange for the requested fare. Moreover, Sofa who worked for them and had provided the tickets in question acknowledged that they had a computer.
Nor can Continental Airlines be viewed as blameless. They had sent the information to Paris and failed to notify Boston and Burnap when they called to confirm. Sofa on the other hand had no direct dealings with claimants. Tribeca, which sued Sofa, failed to establish any responsibility on their part for any of these occurrences.
*475 However, Tribeca and Continental are both liable to claimants. Continental must pay claimants for the balance of the tickets paid for that were unused because claimants were not informed of the scheduled change. Judgment is awarded against Continental, in the amount of $440.
Tribeca Travel bears greater responsibility since it drew up the ticket but never corrected it to reflect the actual departure time. Since the claimants’ return tickets cost $1,384 and Continental is liable for the unused half of the tickets, judgment is awarded against Tribeca Travel in the amount of $994.