*812 OPINION OF THE COURT
Diane A. Lebedeff, J.
This matter brings up a bread-and-butter airline issue — the measure of damages governing the claims of passengers “bumped” from domestic airline flights — an issue rarely explored in detail notwithstanding that more than 30,000 passengers a year could raise similar claims, as permitted by federal statute and regulations (Airline Deregulation Act [ADA], 49 USC § 41713; 14 CFR part 250).
This case has simple facts. Claimant Thatcher A. Stone, a partner in a New York law firm and a lecturer in aviation and airline industry law at the University of Virginia School of Law, made arrangements for a Colorado ski trip for himself and his 13-year-old daughter for the 2004 Christmas season, to depart New York on December 25th and return from Telluride on January 1st. Their flights were booked with Continental Airlines. After their baggage was checked and when the father and daughter were at the airline gate, they were “bumped” from the flight. The Continental representative who testified at the trial stated that Continental records reveal claimant was offered an alternate flight two or more days later, but claimant only remembers clearly an offer of a flight departing one day before their scheduled return. Because the airline would not unload their luggage and could give no firm advice regarding how long the airline would take to return the baggage, which included cold-weather sportswear for both and the father’s ski equipment, the father and daughter returned home and were unable to make any firm alternate ski or “getaway” plans. Continental refunded the price of the airline tickets while claimant was in the airline terminal.
Claimant seeks recovery for out-of-pocket losses and deprivation of the use of the contents of luggage, as well as damages under New York’s consumer protection statutes and punitive damages. He testified that his loss included $1,360 for unrecoverable prepaid ski lodge accommodations, lift tickets and his daughter’s equipment rental, and that the entire experience involved inconveniences and stresses upon himself and his daughter because of the “bumping” and the scheduled holiday “that never was.”
“Bumping” Claims and Federal Limitations
As any airline traveler knows, “bumping” of an unlucky passenger occurs when more passengers appear to take a flight *813 than the number of seats available on a given flight, and it arises because tickets are sold above and beyond the airplane’s seating capacity. The United States Supreme Court, addressing an instance in which consumer advocate Ralph Nader was “bumped” from a flight, described overbooking as “a common industry practice, designed to ensure that each flight leaves with as few empty seats as possible” (Nader v Allegheny Airlines, Inc., 426 US 290, 293 [1976]).
The claims of “bumped” passengers are governed by federal regulation which require an airline to offer compensation to “bumped” passengers (14 CFR part 250, entitled “Oversales,” the predecessor of which was originally published at 41 Fed Reg 16,478, entitled “Priority Rules, Denied-Boarding Compensation Tariffs and Reports of Unaccommodated Passengers” [Apr. 13, 1976]).[1] If a “bumped” passenger rejects an airline’s offer, the passenger is entitled to “seek to recover damages in a court of law or in some other manner” under 14 CFR 250.9 (b), which language is universally regarded as permitting a claim for contract damages which may exceed the amount of compensation offered by an airline.
All tickets for domestic flights embrace these same rights, for every airline’s contract of carriage must be consistent with federal rules (14 CFR 253.4). As described in a comprehensive law review article with an analysis of the economics of overbooking by Elliott Blanchard, Terminal 250: Federal Regulation of Airline Overbooking (79 NYU L Rev 1799, 1800 n 3, 1807-1808 [2004]), since 1990, on average, almost 900,000 domestic passengers are “bumped” annually, and 2003 study data developed by the United States Department of Transportation indicates that 96% of such passengers accept the compensation offered by airlines, leaving approximately 36,000 “bumped” *814 passengers per year who refuse such offers and are entitled to raise damages claims.
Amy other claim which a passenger asserts arises from “bumping” must be parsed out and separately assessed. The bulk of other claims are barred by reasons of law, including federal preemption (49 USC § 41713 [b] [1] [local jurisdictions “may not enact or enforce a law . . . related to a price, route, or service of an air carrier”]; see, Anne K. Wooster, Annotation, Construction and Application of § 105 Airline Deregulation Act [49 U.S.C.A. §41713], Pertaining to Preemption of Authority Over Prices, Routes, and Services, 149 ALR Fed 299; see also, Jim Leslie, Passenger Bumping, 3-AUG Nev Law 10 [1995] [review of available claims relating to carriage and luggage, including claims of discrimination]). Under the federal law, an airline may not be sued for many general matters touching upon airline operation (see, e.g., Smith v Comair, Inc., 134 F3d 254 [4th Cir 1998]; Delta Air Lines, Inc. v Black, supra), but an airline may be sued for some contract issues apart from “bumping” claims (see, American Airlines, Inc. v Wolens, 513 US 219 [1995] [frequent flyer program contractually adopted by airline]). Following such a judicial review of the claims asserted in this case, the court is satisfied that New York State’s consumer protection statutes cannot serve as the proper basis for claims against the airline.[2] Additionally, a punitive damage claim against an airline is barred by federal preemption, even for a “bumped” passenger.[3] Accordingly, the court severs and *815 dismisses the consumer protection and punitive damages claims, which leaves only the contract damages claim before the court.
Contract Damages for a “Bumped” Passenger
A “bumped” passenger is entitled to contract damages upon no greater proof than facts establishing (1) ticket purchase, (2) involuntary denial of boarding within the meaning of the federal regulations, (3) nonacceptance of an airline’s offer of compensation, and (4) damages. Such a claim for contract damages is measured under state law.
As to the items to be embraced within contract damages for a passenger “bumped” from a domestic flight, only a handful of cases on point nationwide have granted relief on this issue (see, Smith v Piedmont Aviation, Inc., 567 F2d 290, 292 [5th Cir 1978] [reciting as a factor in damages, inconvenience and a need to make alternate arrangements, including rental of a car to reach destination, $1,051.80 awarded]; Lopez v Eastern Airlines, Inc., supra, 677 F Supp at 183 [“inconvenience, delay and uncertainty are worth something even in the absence of out-of-pocket costs” for passenger arriving at midnight instead of at a mid-evening hour, $450 awarded]; Goranson v Trans World Airlines, 121 Misc 2d 68, 78, 80 [White Plains City Ct 1983] [“courts have held that damages may consist of a wide variety of elements, including expenses for substitute or alternate transportation, meals, compensation for humiliation, outrage and inconvenience” and damages held to include cost of unused prepaid arrangements where replacement flight delayed departure for two days, $1,500 awarded]; Levy v Eastern Airlines, 113 Misc 2d 847 [Civ Ct, NY County 1982, Hentel, J.] [accepting as prima facie measure of damages twice face value of tickets, $1,074 awarded]).[4]
*816 In addition to case law, two sets of federal regulations give some guidance as to the dollar amount of damages which an airline should reasonably foresee in a “bumping” situation. The first regulation is the “bumping” regulation and airlines must contemplate that an impacted passenger would assert a claim exceeding the $400 per ticket lodestar compensation figure adopted in 1978 by the federal regulations, as well as the fact that the $400 figure would be adjusted to its current economic value. Taking judicial notice of inflation (29 Am Jur 2d, Evidence § 68 [“Current financial data; interest, discount, and exchange rates”; “the effect that inflation has already had on the value of money over a specific period of time is judicially noticeable”]), the inflation-adjusted equivalent to the 1978 figure of $400 is equal to $1,219.63 in 2005 dollars for each passenger, according to a United States Bureau of Labor Statistics inflation calculator.[5]
And, still along general lines, it can be observed that the airline could also expect a somewhat increased claim where the “bumped” passenger has (1) a round trip scheduled with (2) a return flight date showing an appreciable layover period. The formula set forth in 14 CFR 250.5 (a) ignores round-trip passengers, for it refers only to the ticket price to “the passenger’s next stopover, or if none, to the passenger’s final destination.” It would appear that Continental does not distinguish flyers on a return or one-way ticket from passengers on the first portion *817 of a round trip — a distinction which an airline could add to its priority “bumping” rules, which each airline establishes independently under 14 CFR 250.3 — notwithstanding that such a distinction might reduce costs and inconvenience flowing from disruption of ground arrangements for a round-trip customer.
A second element is that a “bumped” passenger is also often exposed to the problem of lost or delayed luggage, which typically is checked before a passenger is denied boarding privileges. Under 14 CFR 254.4, an airline may be liable for “provable direct or consequential damages” for lost, destroyed, or delayed baggage up to the amount of $2,800 per passenger for domestic flights (see, discussing applicable law for claim when amount was $1,250 per passenger, Finestone v Continental Airlines, 195 Misc 2d 795 [App Term, 2d Dept 2003]).
Accordingly, taking together both regulations regarding the loss of the flight boarding privileges and the deprivation of luggage and totaling the dollar figures, a working current economic figure of roughly $4,019 would appear to be within the expectation of an airline per “bumped” passenger, subject to proof of higher or lower damages. Plaintiffs claim of $4,000 in damages clearly is inside this recognizable ballpark.
Against this background, the court can turn to a New York definition of cognizable damages. A starting point is the basic consideration that contract damages can be “general, thus requiring only that plaintiff prove that they flowed naturally from the breach, or . . . special . . . which, to be compensable, must have been foreseeable and within the contemplation of the parties at the time the contract was made” (American List Corp. v U.S. News & World Report, 75 NY2d 38, 41 [1989]; accord, Pakistan Arts & Entertainment Corp. v Pakistan Intl. Airlines Corp., 232 AD2d 29 [2d Dept 1997]). There are three identifiable ingredients of such damages.
First, as to out-of-pocket expenses flowing from the loss of passage, claimant testified that he was unable to recoup $1,360 of prepaid expenses. This item falls within the class of traditionally recognized damages for “bumped” passengers. Had claimant arranged a substitute trip, other supplemental calculations might be required (Wells v Holiday Inns, Inc., 522 F Supp 1023, 1025 [WD Mo 1981] [involving “overbooking” at a hotel, offsetting savings against increased costs, as well as recognizing an allowance for typical expenses involved in a change of travel plans, such as telephone calls to family members]).
Second, it is well settled that an award for inconvenience, delay and uncertainty is cognizable under New York law. Here, *818 a father and teenage daughter were bumped on the outward leg of a week-long round trip during the holiday season to a resort location, leaving the claimant father subject to the immediate upset of being denied boarding in a public setting, and with resulting inconvenience continuing for some period of time thereafter. Inconvenience damages represent compensation for normal reactions and are clearly distinguishable from, and definitively not a disguised award for, severe emotional distress as often pleaded in tort cases.[6]
Although the basis for inconvenience damages was not explored closely in the cases which awarded them to New York passengers, this type of award stems from a well-settled exception to the “general rule [that] mental suffering resulting from a breach of contract is not a subject of compensation . . . [which] does not obtain, however, as between a common carrier or an innkeeper and an insulted and abused passenger or guest, or the proprietor of a public resort and a patron publicly ejected” (Boyce v Greeley Sq. Hotel Co., 228 NY 106, 111 [1920]; see, Johnson v Jamaica Hosp., 62 NY2d 523, 528 [1984] [recognizing continued viability of exception on proper facts]; Lumauig v Philippine Airlines, 624 F Supp 238 [SD NY 1985] [considering exception but finding emotional distress claim went beyond its scope]; see also, Pollock v Holsa Corp., 98 AD2d 265, 267 [1st Dept 1984] [plaintiff’s hotel room given to another, resulting in long drive at night to another location, Court observing, “The ‘physical discomfort’ experienced by plaintiff as *819 a result of this inconvenience is an item of damage that was within the contemplation of the parties”]). This principle is appropriately applied when a license to use a public accommodation is withdrawn in the presence of others (Aaron v Ward, 203 NY 351, 354 [1911] [involving a bathhouse, exception applies where “(t)he action is for a breach of the defendant’s contract and not for a tortious expulsion”]; Morningstar v Lafayette Hotel Co., 211 NY 465, 467 [1914] [café expelled customer perceived to be “a chronic faultfinder”]). On the record presented and the law, inconvenience damages of $1,000 are awarded.
Third, regarding the deprivation of use of the contents of checked luggage, this factor was also present and claimant testified that, had their baggage been made available, he would have arranged for a local substitute ski trip. This portion of the claim was unopposed in that the claimant testified, without protest or objection, that the luggage should have been removed from the flight (see, both cases awarding some damages for failure to remove luggage from a flight, Cohen v Varig Airlines, supra, Kupferman v Pakistan Intl. Airlines, 108 Misc 2d 485 [Civ Ct, NY County 1981]).[7] Further, given that the father and daughter were scheduled for a week-long trip and that their luggage had already been taken from them, the airline was on notice at the time of “bumping” that special damages could arise (17 NY Jur 2d, Carriers § 367 [“Special damages”; “special damages for loss of use of a piece of equipment . . . are not recoverable absent evidence that the carrier knew or should have known that the owner would likely suffer the loss of use if equipment was not delivered as scheduled” or as would have been proper]).
An allowance for the deprivation of use of the contents of the luggage is warranted, bearing in mind that “[m]oney damages are substitutional relief designed in theory ‘to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract’ ” (Freund v Washington Sq. Press, 34 NY2d 379, 382 [1974], quoting 5 *820 Corbin, Contracts § 1002, at 31-32). As to valuation, as set forth in Lake v Dye (232 NY 209, 214 [1921]), “the amount of the recovery ought not to be restricted to the price which could be realized by a sale in the market” but should consider the owner’s “actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property, not including . . . any sentimental or fanciful value he may . . . place upon [the property].” The owner of the personal property may give testimony as to such value (36 NY Jur 2d, Damages § 87 [“Personal articles; wearing apparel”; “The owner of clothing or other personal item who is familiar with its quality and condition is credited with having some knowledge of its value and may give an estimate of its value without having to qualify as an expert”]), and clearly may also testify regarding the anticipated use of the items checked.
Recognizing that 14 CFR 254.4 sets a limit of $2,800 per passenger on claims for lost, destroyed, or delayed baggage, the court awards $750 as rough compensation, giving consideration of a replacement rental value of the father’s ski equipment and the replacement cost of purchase of winter sports wear at a nonluxurious quality for temporary use. Such an amount would have placed claimant in a position that he could have arranged a substitute local ski trip or day-trips for himself and his daughter, as he stated he would have done had he not already been subject to an out-of-pocket loss over $1,000 by reason of defendant’s conduct. Given that no such trips were arranged, the court will not attempt to fix a figure for the cost of anything more than adequate compensation for the deprivation of use of the checked materials.
As to the damages testimony, this court had its opportunity to “view the witnesses, hear the testimony and observe demeanor” (People v Bleakley, 69 NY2d 490, 495 [1987]; see also, Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; Hoover v Durkee, 212 AD2d 839, 841 [3d Dept 1995]). To the extent that there was a dispute as to the facts, the court found claimant credible and credits his version of the facts as true or that, given the explanation he received under pressing circumstances, he was left under the impression were true. It does appear that claimant was not given an offer of compensation in writing, as required by the federal regulations (14 CFR 250.9), and that the airline also *821 failed to post the required information regarding its “bumping” policies (14 CFR 250.11).
Based on the foregoing, judgment shall enter for the total amount of $3,110, comprised of the three items as to which damages have been granted above, with interest from December 25, 2004, the date of the “bumping.” The court determines that such award achieves substantial justice in this small claims matter (CCA 1805 [a]). It is noted that plaintiff did not assert a claim on behalf of the minor daughter.

. Under 14 CFR 250.5 (a), a “bumped” passenger is entitled to compensation of $400 per passenger or a lower amount computed “at the rate of 200 percent of the sum of the values of the passenger’s remaining flight coupons up to the passenger’s next stopover, or if none, to the passenger’s final destination”; an identical text appears in the Continental Contract of Carriage as paragraph (4) (a).
This compensation rule applies only if a passenger is actually “bumped” from the flight because of overbooking (14 CFR 250.6; see, Delta Air Lines, Inc. v Black, 116 SW3d 745 [Tex Sup Ct 2003], cert denied 540 US 1181 [2004] [passenger not “bumped” who declined coach seat when first class seat not available]; O’Carroll v American Airlines, Inc., 863 F2d 11 [5th Cir 1989], cert denied sub nom. O’Carroll v Chaparral Airlines, Inc., 490 US 1106 [1989] [intoxicated passengers removed from airplane not “bumped”]).

. Claimant has raised claims under General Business Law §§ 349 and 350. As to General Business Law § 349, a claim for deceptive consumer practices is prohibited by statute where the airline has complied with federal requirements (General Business Law § 349 [d] [“In any such action it shall be a complete defense that the act or practice . . . complies with the rules and regulations of, and the statutes administered by . . . any official department, division, commission or agency of the United States”]; accord, Mendelson v Trans World Airlines, 120 Misc 2d 423, 424 [Sup Ct, Queens County 1983]).
As to General Business Law § 350, which bars false advertising, this statute has been held inapplicable to airlines (People v Trans World Airlines, 171 AD2d 76 [1st Dept 1991]; see also, Morales v Trans World Airlines, Inc., 504 US 374, 384 [1992] [Texas consumer protection statute preempted by federal law]). Even absent federal preemption, it has been observed that overbooking is such a well-known airline practice that it logically cannot serve as a basis for a claim of consumer fraud (Lopez v Eastern Airlines, Inc., 677 F Supp 181 [SD NY 1988, Sweet, J.]).

. Preemption precludes punitive damage claims by “bumped” passengers (West v Northwest Airlines, Inc., 995 F2d 148, 151 [9th Cir 1993], cert denied 510 US 1111 [1994]). Further, where, as here, the defendant’s actions are *815 permitted by statute and regulation, the airline has taken no action violating a “public right,” which showing is necessary to support punitive damages liability (Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603, 613 [1994] [punitive damages are awarded “not to remedy private wrongs but to vindicate public rights”]; see also, New York Univ. v Continental Ins. Co., 87 NY2d 308 [1995]).

. There are a few additional opinions which can only be used to illustrate types of actual or potential damages which could be claimed, for they do not award damages under domestic departure provisions. Some deny relief on independent substantive grounds (Delta Air Lines, Inc. v Black, supra, 116 SW3d at 748 [Dallas husband and wife requested cost of chartering “private jet to and from Las Vegas at a cost of $13,150, which included the aircrew’s expenses in Las Vegas for two days”]; Alam v Pakistan Intl. Airlines Corp., *816 1995 WL 17201349, *1, 1995 US Dist LEXIS 11919, *2 [SD NY, July 27, 1995, Lee, Mag.], report adopted 1995 WL 489709, 1995 US Dist LEXIS 11627 [SD NY, Aug. 15, 1995] [passenger sought cost of an alternate ticket, “ ‘lodging, travel, loss of earnings, and sundry expenses’ while his family was delayed”]; Sassouni v Olympic Airways, 769 F Supp 537 [SD NY 1991] [emotional distress claimed because alternate international passage offered involved travel on a religious holiday]). Two did not set forth the legal basis of liability (Cenci v Mall Airways, 140 Misc 2d 907 [Albany City Ct 1988] [partial refund of ticket price directed]; Musso v Tourlite Intl., 131 Misc 2d 575 [Civ Ct, NY County 1986] [damages awarded based upon cost of substitute airline tickets and rental car used for local transportation during delay period]). Older “bumping” cases arising prior to the adoption of the current federal regulations— such as Karp v North Cent. Air Lines, Inc. (583 F2d 364 [7th Cir 1978]), and Wills v Trans World Airlines, Inc. (200 F Supp 360 [SD Cal 1961]) — are not considered here because of differences in both the available causes of action and the rules governing cognizable damages.

. The inflation calculator appears on the Internet at <http://data.bls.gov/cgi-bin/cpicalc.pl> and is based upon adjustments to the consumer price index (CPI), with the current year including CPI data for the most recent available month. The appropriateness of an inflation adjustment was noted by Elliott Blanchard, Terminal 250: Federal Regulation of Airline Overbooking (79 NYU L Rev at 1826, supra).

. A full-blown claim for emotional distress is not permitted for a contract-based claim (Cohen v Varig Airlines, 62 AD2d 324 [1st Dept 1978]; Wehringer v Standard Sec. Life Ins. Co. of N.Y., 57 NY2d 757, 759 [1982] [“absent a duty upon which liability can be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty”]; Fleming v Allstate Ins. Co., 106 AD2d 426 [2d Dept 1984], affd 66 NY2d 838 [1985], cert denied 475 US 1096 [1986]; accord, Crowley v S.S. Arcadia, 244 F Supp 597, 598 [SD Cal 1964] [involving claim by “bumped” cruise ship passenger, “contention that (passengers) are entitled to damages for mental suffering, in this action for breach of contract, is contrary to the great weight of authority”], citing Southern Express Co. v Byers, 240 US 612 [1916]; see generally, Gregory G. Sarno, Annotation, Recoverability of Compensatory Damages for Mental Anguish or Emotional Distress for Breach of Service Contract, 54 ALR 4th 901).
Inconvenience damages, as available under state law, are not barred by the federal statute, regulations, or decisions (see, Atherton v FDIC, 519 US 213, 226-227 [1997] [for a discussion of applying federal standards to a state law question]). Such damages may be available for passengers of international flights (Shannon Clark Kief, Annotation, Recovery for Emotional and Mental Injury under Warsaw Convention, 196 ALR Fed 221, collecting decisions).

. In this case, the airline did not argue that any contractual limitation of liability or principle of law limited or barred consideration of this claim. For a general reference as to this area of “baggage” law, see Stephen C. Fulton, Airline Baggage Claims: A Tour Through the Legal Minefield (5 Fla Intl LJ 349 [1990]).